### DIFFANY et al. v. RISLEY.

(Supreme Court, Appellate Division, First Department.  December 10, 1897.)

1. CONTEMPT—REFUSAL OF DEBTOR TO ACCOUNT.
   In January, 1894, defendant R., being then indebted to plaintiffs, transferred his entire business, stock, and accounts to his sister, the consideration being his alleged indebtedness to her.  In November, 1894, plaintiffs obtained a judgment against R., and in 1895 began this creditors' suit, and secured a judgment declaring the bill of sale void, directing R. to account for the property and proceeds so transferred, and enjoining him from interfering with the goods.  Accordingly, under a subpœna calling for production of the books, R. attended before a referee, and testified that prior to the judgment his sister had turned over to the possession of P., S. & Co., in full payment of her indebtedness to them, his books and entire business; that, before this transfer, the property which he had transferred to her in 1894 had been realized on, and chiefly taken out of the business, and that his own books were in the hands of plaintiffs' attorney.  None of this was denied.  On appeal from an order adjudging him guilty of contempt for refusing to account, held, that there was no sufficient basis for the determination.

2. SAME—INTERFERENCE WITH PROPERTY.
   After the defendant in a creditors' suit has been enjoined from transferring certain property, his execution of a transfer which is merely confirmatory of one already completely effected before the injunction is, at most, only a technical contempt, and does not warrant a conclusion that it damaged the creditor to the full amount of his judgment.

Appeal from special term.

Action of Frederick H. Diffany and others against Arthur B. Risley, impleaded, etc. From an order granting a motion to punish defendant Risley for contempt, he appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles B. Meyer, for appellant.
Nathan B. Levenson, for respondents.

O'BRIEN, J. By the order adjudging the appellant guilty of contempt, it was decided that Arthur B. Risley willfully disobeyed the judgment and decree of the court made in this action, by interfering with the property therein mentioned, and disposed thereof contrary to the injunction, and "that he has wholly failed to account for the property the subject-matter of this action, as required by said judgment and decree, it being yet in his power to account as aforesaid." If these grounds, or either of them, upon this record, can be sustained, then the order was right. To determine this necessitates an inquiry into the facts, about which there is no substantial dispute, and which may be briefly summarized.

In January, 1894, Arthur B. Risley, who was then doing business in his own name, and indebted to the plaintiffs, transferred his entire business, consisting of books of account and stock of merchandise, etc., to his sister, Martha S. Risley, the consideration alleged being an indebtedness due by him to her. The sister transferred the business from the place where it was then carried on to No. 31 Union Square. In November, 1894, the plaintiffs obtained judgment against Arthur B. Risley, and in 1895 commenced the present creditors' suit to set aside the transfer of the business. This action was tried in February, 1897, and subsequently decided in plaintiffs' favor, the judgment decreeing "that the bill of sale executed by the defendant Arthur B. Risley to the defendant Martha S. Risley, on the 2d day of January, 1894, is fraudulent and void against the judgment of the plaintiffs"; "that the defendants and each of them account before the referee for the property and proceeds thereof so transferred"; and "that the defendants and each of them and all persons claiming under them be enjoined from removing, selling, or interfering with the goods and merchandise of the defendants at 31 Union Square, New York City, or in any other place where the same may be." It would appear that the decision upon which this judgment was based was presented to the court on April 24, 1897, at which time Arthur B. Risley was in court with his counsel; and he swears that, while he knew about the presentation of the decision, he had no knowledge that it included any injunction, and that he had no intimation as to its contents further than that it was a declaration that he had lost the creditors' suit which the plaintiffs had brought against him and his sister. The decision is indorsed as filed May 5, 1897, and a copy was thereafter served on the defendants' attorney, as was also a copy of the judgment or decree, but just how long after does not appear. The plaintiffs' attorney swears that a

copy of the judgment was thereafter served on the defendant Arthur B. Risley, but the latter as positively asserts that no copy of the decree was ever served upon him. This is the only serious dispute in the case, and it seems to us it could have been removed either by the plaintiffs' attorney saying that he had personally served it, or by producing the affidavit of the person who made the service. The failure to adduce satisfactory proof on that point leaves the question of whether the decree was ever actually personally served on the defendant Arthur B. Risley in doubt. On May 12, 1897, Risley was served with a subpœna duces tecum, requiring him to attend before the referee designated in the judgment, and produce the books. He attended without the books relating to the business as it was at the date of the transfer to his sister, in 1894, which books, he swears, were not in his possession or under his control, and were last seen by him in the possession of the plaintiffs' attorney at the time when he was examined in supplementary proceedings under the first judgment. With reference to the books of the business subsequently conducted under the name of his sister, he stated that they were not in his possession, but in the custody of Palmer, Smith & Co., who, it appears, got possession of not only these books, but also the entire business carried on in her name at 31 Union Square, which Arthur B. Risley stated was of the value of $2,200, consisting of $1,000 in merchandise and $1,200 in book accounts, in full discharge and payment of her indebtedness of some $1,600 or $1,700 to that firm. Arthur B. Risley further testified before the referee that the property which he had transferred to his sister in 1894 had been realized upon by her, and a great portion had been taken by her out of the business, and but little of it had been used to obtain the property which was in 1897 transferred to Palmer, Smith & Co.

These facts were in no way contradicted or assailed; and we do not know what fuller account could be rendered with reference to property which, concededly, had been employed and sold in the conduct of the business for three years after the transfer by Arthur B. Risley to his sister. There was no evidence to show that any of the property which was turned over from the brother to the sister in 1894 was in existence or in the business when the judgment herein was obtained and the accounting asked for, in 1897. Arthur B. Risley testified that all of it had been sold or used prior to the latter date; and, without some slight evidence, we cannot conclude that his testimony before the referee was false, and thence draw the conclusion that there was property for which he should account. It will thus be seen that upon the first ground we have reached a conclusion that there was no sufficient basis for the determination that he had refused to give such account as he could with reference to the property transferred by him to his sister in 1894, by a bill of sale which by the judgment was held to be fraudulent and void.

With regard to the second ground, namely, that he had sold and transferred the business and books thereof to Palmer, Smith & Co. after the decision, the following additional facts appear: The sister carried on the business in her own name, with her brother as manager, assisted therein also by her father, until January, 1897,

when, by a bill of sale, she transferred the entire business to one of her creditors, Palmer, Smith & Co. This firm collected some of the accounts transferred to them by the bill of sale; but it does not appear that they undertook personally to conduct the business until the 1st day of May, 1897, when Arthur B. Risley, as attorney in fact for his sister, who at that time was ill, executed a confirmatory bill of sale of the entire business to Palmer, Smith & Co., which is the bill of sale already described. The contempt charged is necessarily predicated upon the fact that Arthur B. Risley, as attorney in fact for his sister, executed this confirmatory bill of sale, which, the respondents insist, was a willful disobedience of the judgment of the court. The first criticism upon this contention is that, at the time the bill of sale was executed, there was no judgment entered; and the most that can be concluded is that Risley, having been present in court with his lawyer on April 24th preceding, must be held to have known that a judgment would thereafter be entered. If, in anticipation of such a judgment being entered, he had transferred the property the title and possession of which he then had, there would be ground for holding that, with a view to defrauding the plaintiffs, he had acted with intent to treat the judgment thereafter to be entered with contempt. As we read the judgment, however, it set aside the transfer made in 1894, and directed an accounting for the property included therein, and enjoined the defendants from in any way interfering with such of that property as was at No. 31 Union Square. It would be giving a broader scope to the terms of the judgment than we think its language would warrant to hold that it was intended to affect property which had been subsequently acquired by the sister, without at least some adjudication, which is not claimed, that the property at Union Square in 1897, or some portion of it, was the original property transferred, or the result of the investment of its proceeds when sold. The testimony, however, is that none of the original property transferred was at Union Square, but that all of it had been sold, and the proceeds used in one way or another by the sister; and that the property turned over to Palmer, Smith & Co. in January, 1897, as well as that subsequently acquired up to May 1st, when the confirmatory deed was executed, was the result of purchases made either with the money or upon the credit of the sister, and therefore it was not the property which the injunction ran against.

If, however, we draw inferences most favorable to the plaintiffs, namely, that the proceeds of the property transferred in 1894 were invested in property which was at Union Square in 1897,—though there is no evidence from which such inference can be drawn,—still, the title to that property had been formally transferred to, and possession thereof taken by, Palmer, Smith & Co., in the January preceding the entry of judgment; and, without the confirmatory bill of sale, their title and possession could not be disturbed or affected by any judgment against the Risleys. If we should reach the conclusion, therefore, that technically it was a contempt for Arthur B. Risley, as attorney in fact for his sister, to sign the bill of sale, even though this were done before the entry of judgment, still no show-

ing was made that any damage thereby resulted to the plaintiffs. In other words, the possession which Palmer, Smith & Co. had of the property at Union Square under claim of title is what impeded or interfered with the plaintiffs, and not the confirmatory deed alone. We think it was therefore erroneous, because without sufficient basis to support it, to conclude that Risley's acts had damaged the plaintiffs in the full amount of their judgment.

For these reasons, we think the order below was wrong, and should be reversed, and the motion denied, but, under the circumstances, without costs here or in the court below. All concur.